**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **RONALD SMITH, JASON LLOYD, DAVID KACZKOWSKI, and TERRI ALBRIGHT,** | ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | **Case No. 15 C 4737** |
| **DUPAGE COUNTY SHERIFF, and COUNTY OF DUPAGE,** | ) ) ) | **Judge Sharon Johnson Coleman** |
| **Defendants.** | ) | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

Plaintiffs have separately moved for partial summary judgment in their favor on Count I because there is no dispute that the Defendants failed to reasonably accommodate Plaintiffs' disabilities under Seventh Circuit precedent. But even if Defendants' actions were not illegal as a matter of law, Plaintiffs have–at the very least–raised a disputed question of fact to preclude summary judgment in Defendants' favor.

Plaintiffs have offered ample evidence that the Sheriff knew Plaintiffs were disabled, received their reasonable accommodation requests to work in other open positions, and knew Plaintiffs were qualified to work in those positions. Additionally, Plaintiffs have offered evidence that the Sheriff had numerous positions available, faced no barrier to placing Plaintiffs in those positions, refused to respond to Plaintiffs' requests for accommodation, did not offer any alternative accommodation, and repeatedly denied Plaintiffs an opportunity to work, month after month.

The Sheriff belatedly attempts to excuse his failures by claiming that he "chose" to accommodate Plaintiffs by providing them partially paid medical leave. Viewed in the light most favorable to Plaintiffs,

however, the Sheriff completely ignored Plaintiffs' accommodation requests, gave Plaintiffs only the leave and payments independently required by law, and denied Plaintiffs' right to work for years with no justification whatsoever. Defendants' liability is particularly apparent where Plaintiffs' requested accommodation would have saved the Sheriff thousands of dollars and the Sheriff lied repeatedly about why it refused to let Plaintiffs work. Finally, Defendants have waived any argument that Plaintiffs' requested accommodation was an undue hardship.

## Background

Many facts in this case are undisputed. Plaintiffs Ronald Smith, Jason Lloyd, David Kaczkowski, and Terri Albright ("Plaintiffs") were all disabled as a result of on-the-job injuries. Defs' L.R. 56.1 Stmt., Dkt. 41, ¶¶ 4, 22, 39, 50; Def. Mem. in Support of S.J., Dkt. 40, at 8 (conceding Plaintiffs were disabled under the ADA). Because of their injuries, Plaintiffs were unable to perform their regular duties as patrol deputies for the DuPage County Sheriff ("Sheriff").[1] They sat at home for extended periods of time— from 17 to 27 months—while the Sheriff refused to allow them to work. *Id.* ¶¶ 6, 10, 24, 28, 43, 54, 61. During that time, Defendants made payments to Plaintiffs, but they were only payments required by the Public Employees Disability Act (PEDA) and the Illinois workers' compensation statute. *Id.* ¶¶ 11, 12, 29, 30, 45, 46, 55, 61; 5 ILCS 345/1; 802 ILCS 305/1 *et seq.*

It is undisputed that Plaintiffs all suffered substantial economic harm because they were not assigned to open positions. Defs' L.R. 56.1 Stmt., Dkt. 41, ¶¶ 15, 21, 33, 36, 45, 49, 55, 61. In 2014, the Sheriff stopped contributing hundreds of dollars every month towards the cost of their employer-sponsored health insurance and stopped giving them bi-annual raises. *Id.* ¶¶ 15, 21, 33, 36, 45, 48, 49, 55,

---

[1] Defendants repeatedly conflate Plaintiffs' duties as patrol deputies with those of "deputy sheriffs." Def. Mot., Dkt. 40, at 3-6. Plaintiffs concede that, at times, they were unable to perform the essential job duties of *patrol* deputies; however, Plaintiffs always remained deputy sheriffs and were able to perform light duty or other assignments that deputy sheriffs perform, such as working the master or central controls at the DuPage County Jail. Pl. L.R. 56.1 Stmt. Add'l Facts ¶ 10. Moreover, as deputy sheriffs, Plaintiffs could have been temporarily reassigned to positions held by civilians. *Id.* ¶¶ 12–14, 16.

61. In addition, after their PEDA benefits expired, Plaintiffs Lloyd, Albright, and Kaczkowski saw their salaries slashed by one-third. *Id.* ¶¶ 12, 30, 31, 46.

There also is no dispute that while they were disabled, Plaintiffs were qualified to work numerous other open deputy and civilian positions within the DuPage County Sheriff's Department, including in master control and central control, Civil, Warrants, and Receiving and Discharge ("R&D"). Pls' L.R. 56.1 Stmt. Add'l Facts ¶¶ 10–16. Defendants hired at least eleven civilians to fill positions in Civil, Warrants, and R&D while Plaintiffs were out of work. *Id.* ¶¶ 13, 14, 16. The parties also agree that each Plaintiff requested assignment to open positions and that Defendants did not assign any Plaintiff to any such open positions until five months after this lawsuit was filed, in November 2015. Defs' L.R. 56.1 Stmt., Dkt. 41, ¶¶ 7, 10, 25, 26, 40, 41, 57.

As to *why* Plaintiffs were denied the chance to work, Defendants point to two pieces of evidence. First, they point to an unsupported statement from Lieutenant Alan Angus suggesting that some (uncited) provision in a collective bargaining agreement prevented Plaintiffs from working in open light duty positions in master control and central control.[2] *Id.* ¶ 66. Second, for the first time in the litigation, Defendants suggest–in an affidavit from James Kruse–that placing Plaintiffs in open civilian positions in the corrections division would have caused some unspecified inconvenience or expense related to training. *Id.* ¶ 72. However, Defendants never pleaded undue hardship as an affirmative defense. Answer, Dkt. 29.

In contrast, Plaintiffs' evidence demonstrates overwhelmingly that the Sheriff had no reason to deny them open and available positions. First and foremost, Sheriff John Zaruba testified that there was "no barrier" to Plaintiffs filling the open positions they requested, and Chief Shawana Davis, who ran the corrections division, agreed. Pls' L.R. 56.1 Stmt. Add'l Facts ¶¶ 13, 14, 16. Second, neither the patrol

---

[2] None of the workers performing civilian positions in the R&D or Warrants Divisions were subject to a collective bargaining agreement. Pls' L.R. 56.1 Stmt. Add'l Facts ¶ 19. So, at a minimum, no collective bargaining agreement could have prevented the Sheriff from placing Plaintiffs in those open positions.

deputies' collective bargaining agreement, nor the correctional deputies' collective bargaining agreement prevented Plaintiffs from working in master control or central control (or the civilian positions). *Id.* ¶ 18. To the contrary, both collective bargaining agreements include a provision regarding light duty assignments and affirmatively require the Sheriff to place Plaintiffs in open positions. *Id.*

Plaintiffs' evidence also shows that Defendants failed to engage in the ADA-required interactive process by completely ignoring Plaintiffs' requests for accommodation. Plaintiffs made numerous requests for accommodations, but the Sheriff never responded. *Id.* ¶¶ 1–7. Additionally, no one even spoke to Chief Davis, who runs the corrections division, about open positions. *Id.* ¶ 9. In fact, Defendants do not recall ever communicating with Plaintiffs themselves, or in fact anyone, about the Plaintiffs' requests for accommodations. *Id.* ¶ 22. As a result, Plaintiffs sat at home for months and years, suffering both financially and emotionally.

## Argument

A failure to accommodate claim under the ADA requires a plaintiff to establish the following elements: "(1) the plaintiff must be a qualified individual with a disability; (2) the employer must be aware of the plaintiff's disability; and (3) the employer must have failed to reasonably accommodate the disability." *Brumfield v. City of Chicago*, 735 F.3d 619, 631 (7th Cir. 2013). Defendants concede the first two elements, so the parties' only dispute is whether the Defendants failed to accommodate Plaintiffs. On that point, Plaintiffs have raised at least a genuine issue of material fact sufficient to defeat Defendants' motion for summary judgment. Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).

### A. Defendants violated the ADA because they did not allow Plaintiffs to work.

Defendants argue that they accommodated Plaintiffs' disabilities by providing them partially paid medical leave for more than a year while they remained out of work, but a jury reasonably could find that the partially paid medical leave was not a reasonable accommodation under the ADA because it

unnecessarily kept Plaintiffs out of work for one to two years. Indeed, the fundamental purpose of the ADA is to require employers to allow disabled employees to work or to continue working. The ADA assures individuals with disabilities "equality of opportunity, full participation, independent living, and economic self-sufficiency." 42 U.S.C. § 12101(a)(7). To that end, employers must provide a disabled employee the "reasonable accommodations" that allow the person to work on equal terms as those without a disability. 42 U.S.C. § 12112(b)(5); *Lawler v. Peoria Sch. Dist. No. 150*, No. 15-2976, 2016 WL 4939538, at *5 (7th Cir. Sept. 16, 2016) (holding that two weeks of paid medical leave was not a reasonable accommodation, where open positions were available, and where the purpose of an accommodation is to give the employee "an opportunity to continue working"); *Vande Zande v. Wis. Dep't of Admin.,* 44 F.3d 538, 544–45 (7th Cir. 1995) (accommodation means employer "changes … its ordinary work rules, facilities, terms, and conditions in order to enable a disabled individual to work").

Accordingly, an employer's duty under the ADA is "to provide an accommodation that *effectively* accommodate the disabled employee's limitations." *E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 802–03 (7th Cir. 2005) (emphasis supplied). An "accommodation" that does not allow an employee to work is not effective and thus not an accommodation under the ADA. *See U.S. Airways, Inc. v. Barnett,* 535 U.S. 391, 400 (2002) ("An *ineffective* 'modification' or 'adjustment' will not *accommodate* a disabled individual's limitations.") (emphasis in original); *Kummer v. Ill. Cent. R.R. Co.*, No. 13-CV-5313, 2016 WL 3917367, at *3 (N.D. Ill. July 20, 2016) (Coleman, J.) ("preventing an employee with a disability from returning to work violates the ADA if the employee can perform his job with a reasonable accommodation"). *See also* 29 C.F.R. 1630.2(o) (defining reasonable accommodation as modifications or adjustments to the work environment that allow the individual "to perform" the job.)

Defendants ignore this core principle of the ADA and instead try to hide behind the idea that an employer generally can choose the accommodation that it unilaterally deems appropriate, even if the so-

called accommodation unnecessarily keeps a disabled employee out of work for years. But, under the ADA, the employer's choice is only among *effective* accommodations. *See E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 802–03 (7th Cir. 2005) (recognizing an employer cannot choose an "ineffective" accommodation); H.R. Rep. No. 485(III), 101st Cong., 2d Sess. (1990), *reprinted in* 1990 U.S.C.C.A.N. 462 ("In the event there are two *effective* accommodations, the employer may choose") (emphasis supplied). *See also Rehling v. City of Chicago*, 207 F.3d 1009, 1014 (7th Cir. 2000) (stating that summary judgment for a police department employer would not be proper where the employee "[did] not contest the suitability of the [reassignment] accommodations made," but the employee had requested a more reasonable accommodation).[3] In short, an employer cannot exclude an employee from work for years when there is a reasonable accommodation that would allow the employee to work.

Defendants' case authority reinforces Plaintiffs' position. In *Mobley v. Allstate Ins. Co.,* 531 F.3d 539, 546–47 (7th Cir. 2008), the employer had satisfied the ADA by providing the accommodation that the employee's doctor requested (the huddle room), a schedule change, reassignment of work, and change in job duties. Where these accommodations allowed the employee to work, the employer did not *also* have to allow the employee to work from home. *Id.* Likewise, the employer in *Stewart v. County of Brown*, 86 F.3d 107, 112 (7th Cir. 1996) met its ADA obligation by renovating the employee's work space, purchasing new equipment, and allowing him to work just a few hours each day. The employee could still work and the court found it "difficult … to imagine how much more" the employer could have done to "make life more comfortable" for the employee short of a "complete rehab of the building." *Id.* Neither the logic nor the holding of these cases allows an employer to keep employees home and off work indefinitely when there are more than a dozen open positions that the employee can fill to keep working.

---

[3] Employer choice is not dispositive. An employer's refusal to provide the employee's requested accommodation can make an employer's actions unreasonable. "[D]etermining whether an accommodation is reasonable depends, to a significant extent, upon determining whether the employer has acceded to the disabled employee's request." *Rehling*, 207 F.3d at 1014.

Here, a jury reasonably could conclude that Defendants' alleged "accommodation" of leave time was not effective because it did not allow the Plaintiffs to work; they were forced to sit at home for months and years on end, for no good reason.

**B.      Defendants' "accommodation" was patently unreasonable in light of the alternative.**

Plaintiffs also raise a disputed question of fact as to whether partially paid medical leave was a reasonable accommodation where there was another accommodation—assignment to open positions— that would have allowed Plaintiffs to work without loss of pay or benefits.  First, there is no rule that a leave of absence is *per se* reasonable: reasonableness must be considered in light of the alternatives. As this Court recently held, an employer may violate the ADA by placing an employee on paid leave for a mere two months rather than in an open position (even where the plaintiff suffered no economic harm). *Kummer*, 2016 WL 3917367, at *3 (Coleman, J.) (denying summary judgment for employer). *See also Lawler*, 2016 WL 4939538, at *1, 5 (reversing summary judgment for the employer who made the "frivolous" argument that it complied with the ADA when it gave leave instead of transferring an employee to an open position). *Cf. Jay v. Intermet Wagner Inc.*, 233 F.3d 1014, 1017 (7th Cir. 2000) (finding medical leave reasonable when it lasted only until another position became available).

Second, Defendants' argument proves too much. Under Defendants' theory, if an employer hired a disabled cashier who could not stand for long periods of time due to an amputated leg, the employer could place that person on indefinite leave, terminate his or her health insurance benefits, and reduce his or her salary, even if a simple $17 stool would allow the employee to work full time. The ADA does not permit such an absurd result.

Here, Plaintiffs requested the equivalent of a "stool" with a negative cost. Under the PEDA, the Sheriff was obligated to continue paying Plaintiffs' salaries for a year whether they worked or not. 5 ILCS 345/1. Consequently, if the Sheriff had placed Plaintiffs in an open position in R&D, Warrants, or Civil,

then the Sheriff would have saved the salary and benefits that it paid to the newly hired employees for the open positions for the years that Plaintiffs were out of work. Instead, the Sheriff elected to pay Plaintiffs to remain at home <u>and</u> pay salaries and benefits to new civilian employees to fill simple desk jobs that Plaintiffs could have performed. The ADA does not permit an employer to keep a disabled employee out of work for more than a year (especially at less than full pay) when a *costless accommodation* would allow the employee to return to work immediately.

Third, Defendants' cases regarding short-term paid leave are not on point. *Swanson v. Village of Flossmoor*, 794 F.3d 820 (7th Cir. 2015), holds that a police department did not have to create a new light duty position for an injured officer. Here, the Sheriff's office had open light duty positions available, and Plaintiffs never asked the Sheriff to create a new job for them. In *Vande Zande v. Wis. Dep't of Admin.*, 44 F.3d 538 (7th Cir. 1995), after the employer provided extensive accommodations that effectively allowed the employee to work nearly all of the time, it did not also have to buy a computer and allow the employee to work from home just to avoid using 16.5 hours of sick time. *Mays v. Principi*, 301 F.3d 866 (7th Cir. 2002), simply affirmed the employer's assignment of an employee to an open position where the new job was as similar to the old one as possible. *Basith v. Cook Cnty.*, 241 F.3d 919 (7th Cir. 2001), holds that the extensive modifications to the job description of a pharmacy tech were reasonable where they allowed the employee to work his normal job, but not overtime. The two short sentences in this case about a past medical leave are dicta, contain no reasoning, and mention an issue not even appealed. *Id.* at 932. None of these cases address extended leaves in conjunction with open positions that the employee could perform.

Nor do Defendants' cases undermine the clear requirement that an employer must place disabled employees in open positions if that allows them to work. The "ADA does indeed mandate that an employer appoint employees with disabilities to vacant positions for which they are qualified. . . ." *E.E.O.C. v.*

*United Airlines, Inc.*, 693 F.3d 760, 761 (7th Cir. 2012); *Emerson v. N. States Power Co.*, 256 F.3d 506, 515 (7th Cir. 2001); *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 695–96 (7th Cir. 1998); *Konewko v. Vill. of Westchester*, No. 99 C 7277, 2000 WL 1038125, at *7 (N.D. Ill. July 25, 2000) (denying employer's motion for summary judgment where the plaintiff, a police officer, "presented evidence that he was qualified for positions within the police department at the time he requested accommodation [of reassignment]."); 42 U.S.C. §12111(9)(B). As this court correctly held in denying Defendants' motion to dismiss, "[a]bsent a showing of undue hardship, an employer must reasonably accommodate a disabled employee through appointment to a vacant position." *See* Order, Dkt. 24.[4]

Moreover, recently issued EEOC Guidance confirms this straightforward rule. *See* "Employer-Provided Leave and the Americans with Disabilities Act," *available at* www.eeoc.gov/eeoc/publications/ada-leave.cfm. The May 2016 Guidance states that an employer cannot require an employee to remain on leave until he or she is 100% rehabilitated if there is a reasonable accommodation that will allow the employee to work:

> **Example 14:** *An employee with a disability requests and is granted two months of medical leave for her disability. Three days after returning to work she requests as reasonable accommodations for her disability an ergonomic chair, adjusted lighting in her office, and a part-time schedule for eight days. In response, the company requires the employee to continue on leave and informs her that she cannot return to work until she is able to work full-time with no restrictions or accommodations. The employer may not prohibit the employee from returning to work solely because she needs reasonable accommodations (though the employer may deny the requested accommodations if they cause an undue hardship). If the employee requires reasonable accommodations to enable her to perform the essential functions of her job and the accommodations requested (or effective alternatives) do not cause an undue hardship, the employer's requirement violates the ADA.*

---

[4] To the extent *Pearman v. New Albany City Gov't*, No. 4:14-CV-00120, 2016 WL 1700413, at *1 (S.D. Ind. Apr. 28, 2016) is contrary, it is not consistent with controlling Seventh Circuit case law about open positions. Regardless, the *Pearman* case is also distinguishable. The plaintiff there wanted the police department to create a light duty position for him when there was no position open; here, it is uncontested that the Sheriff had at least eleven positions available. Further, in *Pearman*, the police department made an exception to its standard rules by giving the officer extra leave and some light duty work when available; here, Plaintiffs were granted no accommodation, extra leave or benefits, or any alternate position until November 2015.

*Id*. Put otherwise, an employer may not force an employee to remain out on leave–paid or unpaid–if there are other, more reasonable accommodations that will allow the employee to work.

Once again, Plaintiffs point to unchallenged evidence of more than eleven open positions that they could have filled during the relevant time. Pls' L.R. 56.1 Stmt. Add'l Facts ¶¶ 13, 14, 16. On a failure-to-assign accommodation claim, this is sufficient to survive summary judgment. *Kummer*, 2016 WL 3917367, at *4 ("To survive summary judgment on the question of reassignment, a plaintiff must 'adduce evidence that would permit a reasonable factfinder to infer the existence of a vacant and permanent position.'") (quoting *Johns v. Laidlaw Educ. Servs.*, 199 Fed. Appx. 568, 570–71 (7th Cir. 2006)).

**C.      Defendants have no excuse for refusing to allow Plaintiffs to work.**

Though Defendants now suggest that it might have been difficult to assign Plaintiffs to the open positions, they have waived any argument about undue hardship by not raising it until summary judgment, and, regardless, Defendants' own testimony contradicts any such defense.

First, any argument regarding the hardship of reassignment is an affirmative defense. FRCP 8(c); 29 C.F.R. §1630.15(d); *Rodal v. Anesthesia Group of Onondaga, P.C.*, 369 F.3d 113, 121–22 (2d Cir. 2004) ("Undue hardship is an employer's affirmative defense"); *Riel v. Electronic Data Systems Corp.*, 99 F.3d 678, 684 (5th Cir. 1996) ("EDS may not place the burden of proof of undue hardship on [plaintiff] merely by refusing to plead the affirmative defense and then attacking his proposed accommodations as unreasonable in his specific circumstance."). Because Defendants never pled the affirmative defense of undue hardship, the defense is now waived. Answer, Dkt. 29; *Castro v. Chicago Hous. Auth.*, 360 F.3d 721, 735 (7th Cir. 2004) ("if a Defendant does not raise defenses at the time of filing an answer, those defenses are deemed waived"). Moreover, Defendants never informed Plaintiffs of this purported defense

until their summary judgment motion, so Plaintiffs never took discovery on it.[5] Thus, Plaintiffs would be unfairly prejudiced if Defendants were allowed to pursue the defense at this late stage.

Second, even if allowed to maintain an undue hardship affirmative defense, the evidence shows that Defendants' factual arguments about hardship are disputed. Defendants hint that assigning Plaintiffs to civilian positions in the jail would have caused some inconvenience related to training, Defs' L.R. 56.1 Stmt., Dkt. 41, ¶ 72, and that assigning Plaintiffs to master control or central control deputy positions would be somehow complicated by the CBA, *id.* ¶ 66. Neither one of these arguments is sufficiently supported by the record, and Defendants do not explain either one with any specificity. They have not identified which provision of the CBA prevents Plaintiffs from working in master control or central control, and it has not quantified the cost of training someone in a R&D position.

Additionally, Defendants' new arguments are completely undermined and contradicted by the testimony of Sheriff Zaruba himself and Chief Davis, who ran the jail and was responsible for, among other things, the master and central control and R&D jobs. Both testified that there was no barrier to placing Plaintiffs in the open civilian positions. Pls' L.R. 56.1 Stmt. Add'l Facts ¶¶ 13, 16. Moreover, neither the corrections deputies' CBA nor the patrol deputies' CBA provide any barrier to patrol deputies being placed in light duty in the corrections division. *Id.* ¶ 18.

Third, Defendants' changing story undermines the veracity of their new-found hardship arguments. Initially in 2014, the Sheriff told the EEOC that Plaintiffs had been kept out of work because there were no positions available. *Id.* ¶ 20. Then, in 2015, the Sheriff stated again in interrogatory responses that it refused Plaintiffs' accommodation requests because there were no positions available. *Id.* ¶ 21. Yet, Plaintiffs learned in discovery, and Defendants do not now deny, that this explanation was false.

---

[5] Had Defendants timely raised the defense, Plaintiffs would have taken appropriate discovery on this defense, and, for example, would have asked the relevant Sheriff's supervisors in depositions to quantify the cost of training a deputy to work in R&D and determined a precise dollar value for the supposed increased cost.

At least eleven positions were available. *Id.* ¶¶ 13, 14, 16. Only now with their first and only defense disproven have Defendants suddenly raised an alleged hardship argument.

Particularly in light of these earlier dishonest statements, Defendants' attempt to manufacture an eleventh hour excuse for denying Plaintiffs the chance to work should not save them from Plaintiffs' motion for summary judgment, and certainly, viewed in the light most favorable to Plaintiffs, does not permit summary judgment in Defendants' favor.

### D. Employer choice is no defense for ignoring an employee with a disability.

If there were any doubt, Defendants' failure to abide by the ADA is firmly corroborated by Plaintiffs' evidence that Defendants did not "choose" an alleged "accommodation" at all; they ignored the Plaintiffs' requests for reassignment, utterly failed to engage in the interactive process, and offered no accommodation whatsoever. When it learns about a disability, "the employer must engage with the employee in an 'interactive process' to determine the appropriate accommodation under the circumstances." *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 563 (7th Cir. 1996). *See* 29 C.F.R. § 1630.2(o)(3). "[I]f the employee has requested an appropriate accommodation, the employer may not simply reject it without offering other suggestions or at least expressing a willingness to continue discussing possible accommodations." *EEOC v. Sears, Roebuck and Co.*, 417 F.3d 789, 806 (7th Cir. 2005); *see also Lawler*, 2016 WL 4939538, at *5 (finding that the employer's "outright refusal" to look for open positions for an employee "belies any contention that [the employer] made a reasonable attempt to explore possible accommodations"); *Bultemeyer v. Fort Wayne Community Schs.*, 100 F.3d 1281, 1287 (7th Cir. 1996) (stating that a party to the interactive process acts in bad faith when it completely ignores a request for reasonable accommodation).

Here, Defendants utterly failed to engage in any interactive process. Plaintiffs repeatedly requested assignment to other positions, including through a formal letter from counsel on August 4, 2014. Yet

Defendants never responded. Pls' L.R. 56.1 Stmt. Add'l Facts ¶ 7. No one spoke to Chief Davis about any open positions at the jail, *id.* ¶ 9, and the Sheriff does not recall any communications with anyone, including Plaintiffs, about their requests, *id.* ¶ 22. Indeed, until November 2015, no supervisor ever spoke with any of the Plaintiffs (or with anyone else) about any open positions. *Id.*

Defendants now pretend that that they "chose" to accommodate Plaintiffs through leave that was partially paid. In reality, Defendants did nothing of the sort; they only paid Plaintiffs in accordance with the PEDA and the Illinois workers' compensation statute without looking for open positions. This was not an accommodation at all. An "accommodation" under the ADA is a modification of the existing rules that keeps the employee with a disability working. *See Beck v. University of Wis. Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996); *Vande Zande,* 44 F.3d at 542 (accommodation means employer "changes … [to] ordinary work rules, facilities, terms, and conditions). Simply following an existing law or contractual requirement is not an accommodation. *Reilly v. Revlon, Inc.*, 620 F. Supp. 2d 524, 543 (S.D.N.Y. 2009) ("Providing legally-required FMLA leave is not any sort of accommodation; it is a requirement of law."). The Sheriff's claim that it "chose" the "accommodation" of partially-paid leave, when it flatly ignored Plaintiffs for years, is disingenuous at best and sufficiently pretextual to allow a jury to find for Plaintiffs.

**E.**     **Plaintiff Smith has raised a question of fact about his need for a larger vehicle as an accommodation.**

Though Defendants concede that Plaintiff Smith was disabled for purposes of the ADA (D. Mot. for S.J., Dkt. 40 at 8), they argue that he was not entitled to the reasonable accommodation of the use of a different vehicle to carry out his patrol duties. However, Plaintiff Smith has raised a question of fact as to whether Defendants' categorical refusal to even consider accommodating his disability with the assignment of a larger Ford Explorer patrol vehicle (that was indisputably available) violates the ADA.

Smith provides evidence that beginning in July 2013, he requested assignment to a larger patrol vehicle that did not have a seat belt jutting through the seat exacerbating his back problems. Pl. L.R. 56.1

13

Stmt. Add'l Facts ¶ 26. Smith's accommodation request was based on the medical advice of his doctor that a different vehicle was needed to address his sacroiliitis (lower back pain). *Id.* ¶ 29. However, each time he made his request, Defendants denied it, even though different patrol vehicles were readily available. *Id.* ¶ 27.

Smith's back pain caused him to be disabled because it substantially limited him in the major life activities of performing manual tasks and bending. *See* 42 U.S.C. § 12102(2)(A).[6] Smith testified, and there is no contrary evidence, that his sacroiliitis prevented him from engaging in common household chores, including yard work, painting, and cleaning without experiencing significant pain. *Id.* ¶ 25. The injury also prevented him from repeatedly bending from the waist without experiencing significant pain. *Id*. This evidence is sufficient to create a disputed fact as to whether Defendants failed to accommodate Smith's back pain disability.

Nonetheless, Defendants argue that Smith was not disabled because his only limitation was driving, which Defendants do not consider a major life activity. Defendants misunderstand Smith's disability. Smith's disability was not a *limitation* on driving, it was a substantial limitation on other major life activities (performing manual tasks and bending) *caused* in part by driving in Defendants' squad car. Defendants present no evidence to rebut Smith's physical limitations or their connection to his driving in his assigned squad car.

Next, Defendants argue Smith was sufficiently accommodated because he could instead get out of his car or take a sick day. The Sheriff's proposed accommodations (either deal with the pain and stretch when it becomes unbearable or take a sick day) are ineffective and inadequate under the ADA. After refusing Smith's repeated requests for a larger patrol vehicle for nine months, Smith's ongoing back pain

---

[6] "In 2008, Congress passed the ADA Amendments Act (ADAAA), which relaxed this inquiry significantly." *Ceska v. City of Chicago*, No. 13 C 6403, 2015 WL 468767, at *2 (N.D. Ill. Feb. 3, 2015). Of particular note, Congress stated that the term "substantially limits" should be interpreted broadly to provide wide coverage. *EEOC v. AutoZone, Inc.*, 630 F.3d 635, 641 n.3 (7th Cir. 2010).

14

was exacerbated by an injury on the job in March 2014, causing him to miss months of work. *Id.* ¶ 29. His ongoing back pain, subsequent injury and absence from work demonstrate his disability had not been adequately addressed or accommodated, even with the option of breaks and sick days.

In addition, the options proposed by the Sheriff were not the accommodations Smith requested, which is another factor for a jury to consider in determining whether the Sheriff offered a reasonable accommodation. *Rehling*, 207 F.3d at 1014 ("[D]etermining whether an accommodation is reasonable depends, to a significant extent, upon determining whether the employer has acceded to the disabled employee's request," and stating it would be a question of fact where the employer's accommodation still caused hardship on the employee). Moreover, as with the open positions discussed above, Defendants did not elect an alternative "accommodation" or work with Smith to address his disability. It simply refused to make any accommodation at all, including the one recommended by medical professionals and requested by Smith.

Thus, Smith has raised questions of fact as to whether his back-pain disability substantially limited him in a major life activity and as to whether the Sheriff is liable for having refused to provide an effective accommodation by assigning Smith to an available larger police vehicle.

## <u>Conclusion</u>

On this record, Plaintiffs' motion for summary judgment (Dkt. 24) is well supported and should be granted. But, at the very least, viewing the evidence in the light most favorable to Plaintiffs, they have created multiple disputed facts as to Defendants' liability for failing to accommodate their disabilities under the ADA. Therefore, the Court should deny Defendants' motion for summary judgment.

Respectfully submitted,

/s/ Christopher J. Wilmes
One of the Plaintiffs' Attorneys

15

José J. Behar
Christopher J. Wilmes
HUGHES SOCOL PIERS RESNICK & DYM, LTD.
Three First National Plaza
70 W. Madison Street, Suite 4000
Chicago, IL 60604
(312) 580-0100